DECISION AND JOURNAL ENTRY
Appellant, Tonya Reynolds, appeals the decision of the Summit County Court of Common Pleas, Juvenile Division, granting appellee, the Summit County Children Services Board ("CSB"), permanent custody of her son, Leon Newsome. We affirm.
Ms. Reynolds is the mother of Leon Newsome, who was born on October 2, 1984. As Ms. Reynolds was repeatedly incarcerated, Leon's maternal grandmother, Donzella Jones, had custody of Leon for the majority of his life. However, in November 1997, Ms. Jones was evicted from her apartment and brought Leon to CSB because she could no longer care for him, due in part to his continual behavioral problems. On November 20, 1997, CSB filed a complaint alleging that Leon was a neglected and dependent child and sought emergency temporary custody and temporary custody of Leon. Shortly thereafter, the juvenile court granted CSB emergency temporary custody of Leon. Leon was adjudicated dependent and neglected on March 20, 1998, and CSB was awarded temporary custody. Subsequently, CSB filed a motion for long-term foster care of Leon and later amended that motion to include an alternative disposition of permanent custody on February 17, 1999. A hearing was held on April 8 and 22, 1999. At the hearing, Ms. Reynolds was present and represented by counsel. In a judgment entry and order journalized on May 11, 2000, the juvenile court terminated Ms. Reynolds's parental rights and awarded CSB permanent custody of Leon. This appeal followed.
Ms. Reynolds asserts a single assignment of error:
 THE TRIAL COURT'S DECISION GRANTING PERMANENT CUSTODY OF THE MINOR CHILD, LEON NEWSOME, TO THE SUMMIT COUNTY CHILDREN SERVICES BOARD WAS CONTRARY TO LAW, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONSTITUTED AN ABUSE OF DISCRETION.
 In her sole assignment of error, Ms. Reynolds avers that the evidence presented at the permanent custody hearing did not support the award of permanent custody to CSB by clear and convincing evidence, but rather, supported an award of long-term foster care in a highly structured residential facility. She further contends that the juvenile court's finding that it was in the best interest of the child to grant CSB permanent custody of Leon constituted an abuse of discretion and was against the manifest weight of the evidence. We disagree.
When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. In re Ozmun (Apr. 14, 1999), Summit App. No. 18983, unreported, at 3. In determining whether a criminal conviction is against the manifest weight of the evidence:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
 State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
Termination of parental rights is an alternative of last resort, but is sanctioned when necessary for the welfare of a child. In re Wise (1994),96 Ohio App.3d 619, 624. The termination of parental rights, when the child is neither orphaned or abandoned, is governed by R.C.2151.414(B),[1] which states in relevant part:
 The court may grant permanent custody of a child to a movant if the court determines * * * by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents[.]
 Thus, before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, who is neither abandoned nor orphaned, it must find by clear and convincing evidence that (1) the child cannot be placed with either parent within a reasonable amount of time or should not be placed with the parents, based on an analysis under R.C. 2151.414(E), and (2) granting permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1); see also, In re William S. (1996), 75 Ohio St.3d 95, 99. Clear and convincing evidence is that which will produce in the trier of fact "`a firm belief or conviction as to the facts sought to be established.'" In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
We will first discuss whether Leon could not have been placed with Ms. Reynolds within a reasonable amount of time or should not be placed with her. In making this determination, the trial court must find by clear and convincing evidence that at least one of the enumerated factors in R.C.2151.414(E) exists. In re William S., 75 Ohio St.3d at 101. In the case at bar, the juvenile court primarily based its decision on the following factors under R.C. 2151.414(E):
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year * * *;
* * *
 (8) The parent is repeatedly incarcerated and the repeated incarceration prevents the parent from providing care for the child;
* * *
 (12) Any other factor the court considers relevant.
 When a juvenile court finds by clear and convincing evidence that one of the enumerated factors in R.C. 2151.414(E) is present, the court must then conclude that the child cannot be placed with the parent within a reasonable time or should not be placed with the parent. In re Thorn (Feb. 16, 2000), Summit App. No. 19597, unreported, at 8.
The court below found that Ms. Reynolds was repeatedly incarcerated throughout Leon's life, which prevented her from taking care of Leon. Further, the court noted that Ms. Reynolds admitted to being an alcoholic and drug addict and that some of her prior convictions were for drug-related offenses. Despite expressing an intention to seek substance abuse counseling and to obtain employment upon release from incarceration, Ms. Reynolds did not previously attend treatment programs for these problems upon her prior releases from prison. Lastly, Ms. Reynolds was unable to comply with her case plan,[2] due to her incarceration. After carefully reviewing the record, we cannot say that the juvenile court clearly lost its way and created a manifest miscarriage of justice by finding that Leon could not or should not be placed with his mother within a reasonable time.
We now turn to the issue of whether granting permanent custody is in the child's best interest. In determining the best interest of a child, R.C. 2151.414(D) requires the court to consider all relevant factors. These factors include, but are not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem [sic], with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
R.C. 2151.414(D)(1)-(4).
The evidence adduced at the hearing supports the juvenile court's determination that granting CSB permanent custody of Leon was in his best interest. As to the first and second factors, the evidence showed that Leon had significant attachment, educational, and behavioral problems and had difficulty trusting others. Leon also suffers from depression for which he takes medication. There was mixed testimony about whether Leon had a strong bond with his younger brother Calvin.[3] However, Herman Ford, a close family friend, opined that Leon was a bad influence on Calvin, who exhibited behavioral problems after visits with Leon. Ms. Reynolds concurred in this assessment. Further, the guardian ad litem
noted that Leon and Calvin seldom talked about one another. Moreover, although Ms. Reynolds testified that she and Leon had a bond, Vanessa Wright, a caseworker for CSB, testified that Leon had told her that he did not want to visit with his mother because she was abusive.[4]
There was also testimony that Leon would run away when Ms. Reynolds stayed at Ms. Jones's house, while Ms. Jones still had custody of Leon. Ms. Wright also testified that Leon did not do well when placed in a traditional foster home and continued to have severe behavioral and educational problems, while at CSB.[5] Conversely, when Leon was placed at the Eastside residential facility, which is an emergency bed shelter, Leon thrived and his behavior stabilized. The guardian adlitem reported that Leon was very attached to the couple who ran the Eastside residential facility and stated in his report that Leon would benefit greatly from a safe, stable, and therapeutic setting, pursuant to CSB's request.[6] At the hearing, Leon's wishes as expressed through his guardian ad litem were for CSB to be granted permanent custody and for parental rights to be terminated.
Regarding the third factor, Ms. Reynolds testified that she had not been the primary caregiver or custodian of Leon for the majority of Leon's life, as she had been repeatedly incarcerated. Leon's maternal grandmother had custody of Leon until November 1997, at which time, she was evicted from her apartment. Although Ms. Reynolds expressed an interest in visiting with Leon in the future and had previously sought visitation during her incarceration,[7] the last time that she visited with him was immediately before Christmas in 1997. Since November 1997, Leon has been in the continuous custody of CSB.
As to the fourth factor, the record demonstrated that Leon's needs include structure and stability in his life. Most of the witnesses, including Ms. Reynolds, agreed that it was in Leon's best interest to placed in a therapeutic foster home. Further, the juvenile court noted that this type of care, as well as placement in a residential facility, could be accomplished through an award of permanent custody to CSB. After thoroughly reviewing the record, we conclude that the juvenile court did not commit a manifest miscarriage of justice and act against the manifest weight of the evidence in finding that granting CSB permanent custody was in Leon's best interest.
Accordingly, Ms. Reynolds's assignment of error is overruled.
The decision of the Summit County Court of Common Pleas, Juvenile Division is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
[1] R.C. 2151.414 was amended on March 18, 1999 and October 29, 1999; however, we must apply the former version of R.C. 2151.414, as CSB filed its motion for permanent custody before the effective date of the amendments. In re Thorn (Feb. 16, 2000), Summit App. No. 19597, unreported, at 7, fn. 2.
[2] Ms. Reynolds's case plan included refraining from criminal activity, obtaining appropriate housing, obtaining a legitimate income, and visiting Leon on a regular basis.
[3] Calvin was placed into the legal custody Herman Ford under the protective supervision of CSB.
[4] At the hearing, Ms. Reynolds admitted to whipping Leon with a belt, but testified that she only did it a few times.
[5] Leon had been expelled from numerous schools, had received poor grades, and had a habit of stealing.
[6] On September 25, 2000, this court granted leave for the parties to supplement the record with the exhibits admitted during the permanent custody hearing, as they were missing from the record, by October 2, 2000. On October 2, 2000, appellant moved for an extension of time to file copies of these exhibits and filed them on October 5, 2000. This motion is granted.
[7] Ms. Reynolds's requests for visitation with Leon while she was incarcerated were denied.